UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

IRSHAD KARIM,

*Petitioner*,

– against –

RAUL MALDONADO JR., in his official capacity as Warden, Metropolitan Detention Center; JUDITH ALMODOVAR, in her official capacity as Acting New York Field Office Director for U.S. Immigration and Customs Enforcement; MARKWAYNE MULLIN, Secretary of the Department of Homeland Security; TODD BLANCHE, Attorney General,

*Defendants*.

**MEMORANDUM & ORDER**
26-cv-06045 (NCM)

**NATASHA C. MERLE**, United States District Judge:

Petitioner Irshad Karim is a native and citizen of India. Pet. ¶ 20, ECF No. 1. He entered the United States in 2024 on a non-immigrant visa. Pet. ¶2. On August 12, 2026, petitioner was arrested by U.S. Immigration and Customs Enforcement ("ICE") officers and has been detained in ICE custody since his arrest. Pet. ¶¶ 4, 36–41. He is currently being held in the Metropolitan Detention Center. Pet. ¶¶ 1, 41.

On September 29, 2026, petitioner filed a petition for a writ of habeas corpus before this Court. *See generally* Pet. The petition argues that (1) petitioner was not provided an individualized custody determination before being detained and that (2) the Immigration Judge ("IJ") who oversaw his bond hearing improperly placed the burden of proof on him, rather than the government. Pet. ¶¶ 52–93. Petitioner's Reply further adds that (3) he was arrested pursuant to an invalid Notice to Appear ("NTA"), and (4) the IJ

rendered his bond hearing fundamentally unfair by denying an adjournment so that his lawyer could obtain copies of his asylum application and then relying on the "speculative" nature of his asylum claim when refusing him bond. Reply 4–6, 7–9. As a result, petitioner urges, his current detention violates the Fifth Amendment, Pet. ¶¶ 94–100, and he should be released or, at minimum, receive a new bond hearing, Pet. 14.[1] For the reasons explained below, the petition is GRANTED in part and DENIED in part.

## BACKGROUND

### I. Factual Background

Petitioner arrived in the United States at Newark International Airport on March 17, 2024. Pet. ¶ 2. He was admitted on a B-1 non-immigrant visa. Pet. ¶ 25. The visa authorized him to remain in the United States no later than September 16, 2024. Pet. ¶ 26. Petitioner acknowledges that he remained in the United States beyond that expiration date. Pet. ¶ 26.

On December 31, 2024, petitioner filed an application for relief from removal, including asylum, withholding of removal, and protection under the Convention Against Torture, with the U.S. Citizenship and Immigration Services ("USCIS"). Rodriguez Decl. ¶ 6, ECF No. 8-4; Pet. ¶ 27. Petitioner was granted employment authorization. Pet. ¶ 28. His asylum application remains pending. Rodriguez Decl. ¶ 6; Pet. ¶ 27.

On June 10, 2026, petitioner was arrested for allegedly selling tobacco to a person under the age of 21. Pet. ¶ 32; Rodriguez Decl. ¶ 7. Petitioner maintains that as of the filing of his petition, that case has been dismissed. Pet. ¶ 34. The government maintains that as

---

[1] Throughout this Order, page numbers for docket filings refer to the page numbers assigned in ECF filing headers.

of the filing of its Response, the case remains pending in Suffolk County district court. Rodriguez Decl. ¶ 7.

That charge brought petitioner to the attention of ICE, which concluded that probable cause existed to believe that he was removable. Rodriguez Decl. ¶¶ 8–9. On July 17, 2026, an NTA was issued charging petitioner with removability under INA § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B), for overstaying his visa. Rodriguez Decl. ¶ 9; NTA, ECF No. 8-5. The NTA called for petitioner to appear before an immigration court on July 27, 2026. NTA 2. A minute after the NTA was issued, a Form I-200 arrest warrant was also issued naming petitioner. Rodriguez Decl. ¶ 9; Form I-200 at 2, ECF No. 8-6.

ICE officers executed the warrant and arrested petitioner on August 12, 2026, at 8:15 AM. Pet. ¶ 36; Rodriguez Decl. 10. After his arrest, he was transported to the Central Islip ICE Hold Room at 535 Federal Plaza, Central Islip, New York, for processing. Rodriguez Decl. ¶ 10.

According to the government, during that processing, Acting Supervisory Detention and Deportation Officer Patrick Heerey conducted an individualized custody determination for petitioner. Rodriguez Decl. ¶ 11. The government, via declaration, states that, as part of that determination, Heerey interviewed the defendant about various details relevant to his possible detention. Rodriguez Decl. ¶ 11. Petitioner was also given "an opportunity to be heard regarding whether he would pose a danger to the community or a flight risk if he were released." Rodriguez Decl. ¶ 11. Following the interview, Heerey determined that petitioner had failed to demonstrate that he did not pose a danger to others (mainly due to his recent tobacco-related charge) or that he was not a flight risk. Rodriguez Decl. 11. At about 10:49 AM on August 12, petitioner was served with a Form

I-286, Notice of Custody Determination, informing him that he would be detained. Rodriguez Decl. ¶ 12.

Shortly thereafter, a superseding NTA was issued, because the court date listed on the first NTA, July 27, 2026, had already passed. Rodriguez Decl. ¶ 13. Petitioner was served with both the superseding NTA and the Form I-200 arrest warrant. Rodriguez Decl. ¶ 14. Petitioner was then transferred several times over the subsequent week and a half. Rodriguez Decl. ¶¶ 17–20. On August 24, 2026, he was brought to MDC, where he remains detained now. Rodriguez Decl. ¶ 20.

While detained, petitioner requested and was granted a custody redetermination hearing (also referred to as a bond hearing) in front of an IJ. Pet. ¶ 42; Rodriguez Decl. ¶ 16. That hearing occurred on September 11, 2026. Pet. ¶¶ 45–47; Bond Hr'g Tr., ECF No. 8-3. Prior to the hearing, petitioner's counsel did not possess, and thus could not provide, evidence of petitioner's pending application for asylum. Bond Hr'g Tr. 5:03–25; Reply 7. Accordingly, the government argued that petitioner was a flight risk, given his relatively short time in the country and the lack of apparent "viable options to remain" in the country that would incentivize his further appearance at court hearings. Bond Hr'g Tr. 4:22–5:01.

Though the IJ accepted petitioner's counsel's assertion that the application had been filed, she noted that without the application papers, it would be difficult to assess whether petitioner's asylum claim was likely to be meritorious. Bond Hr'g Tr. 5:09–15. Further, she explained, "there [were] other flight risk concerns." Bond Hr'g Tr. 6:06. Petitioner's counsel asked to adjourn the hearing and be permitted to provide the documents. Bond Hr'g Tr. 5:21–6:04. When that request was denied, he argued against the idea that petitioner was a flight risk, urging that petitioner's asylum application, work

authorization, and letters of support from his U.S. friends, employer, and the sponsor of his bond all indicated otherwise. Bond Hr'g Tr. 6:09–18.

Ultimately, however, the IJ concluded that petitioner was a "significant flight risk" and that a monetary bond would not mitigate that risk. Bond Hr'g Tr. 6:24–7:10. Specifically, the IJ explained

> [Petitioner has] only been in the United States for 2 years. He claims to be working. I see that he has a letter from an employer, but he was arrested for violating the law at that same store. There's no proof he's filed any taxes. There's no proof such as a lease or deed to a home where he has been living to show a stable residence. He has no family members in the United States with any legal status. His sponsor is a friend that he met at the store 2 years ago. In short, there is a significant lack of any residency, family, community, property, business, employment or other ties in the United States and relief is speculative.

Bond Hr'g Tr. 6:25–7:10. Accordingly, the IJ denied bond. Bond Hr'g Tr. 7:10.

Petitioner's appeal of that decision was scheduled to be due on October 13, 2026. Bond Hr'g Tr. 7:16. As of October 6, 2026, that appeal had not yet been filed. Rodriguez Decl. ¶ 24.

## II. Procedural History

Petitioner filed the habeas petition at issue in this case on September 29, 2026, arguing that his detention violates the Fifth Amendment's Due Process Clause. *See generally* Pet. Specifically, petitioner argues that (1) he was not provided an individualized custody determination before being detained and (2) the IJ improperly placed the burden of proof on him, rather than the government, at his bond hearing. Pet. ¶¶ 52–93.

The same day the petition was filed, this Court issued an order directing respondents to submit a letter stating: (1) the statutory provision(s) under which

respondents assert the authority to detain petitioner; and (2) whether the Second Circuit's decision in *Barbosa da Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026) controls, or whether otherwise there is any material basis to distinguish the instant case from this Court's prior decisions in *Y- C- v. Genalo*, No. 25-cv-06558, 2025 WL 3653496 (E.D.N.Y. Dec. 17, 2025), *Crespo Tacuri v. Genalo*, No. 25-cv-06896, 2026 WL 35569 (E.D.N.Y. Jan. 6, 2026), *Terrero v. Tsoukaris*, No. 26-cv-00869, 2026 WL 607917 (E.D.N.Y. Mar. 4, 2026), *Meza v. Francis*, No. 26-cv-02722, 2026 WL 1734903 (E.D.N.Y. June 16, 2026), *R.J.S.R v. Mullin*, No. 26-cv-03611, 2026 WL 1803649 (E.D.N.Y. June 23, 2026), *Menjivar v. Genalo*, No. 26-cv-02506, ECF No. 16 (E.D.N.Y. June 12, 2026), *R.M.R. v. Genalo*, No. 26-cv-04358, 2026 WL 2211009 (E.D.N.Y. July 31, 2026), or any other decision of this Court. Scheduling Order 2–3, ECF No. 4.

On October 6, 2026, the government filed a response opposing the petition. *See* Resp., ECF No. 8. After stating that petitioner is subject to discretionary detention under 8 U.S.C. § 1226(a), the Response argues first that the petition should be dismissed because petitioner has not yet exhausted his administrative appeals. Resp. 4, 6–8. Next, it argues that petitioner's post-arrest individual custody determination was sufficient to meet the § 1226(a)'s individualized determination requirement. Resp. 8–10. Specifically, the Response maintains that "due process does not require that [individualized custody] assessment take place prior to arrest." Resp. 10. Finally, the Repsonse argues that, after only 30 days of detention, petitioner was not yet entitled by the Due Process Clause to a bond hearing in which the government bore the burden of proof. Resp. 11–13.

The following day, petitioner replied. *See* Reply, ECF No. 9. The Reply argues that petitioner's detention is unlawful because he was not "afforded an opportunity to be heard before or contemporaneously with the 8:15 a.m. deprivation of liberty"—in other words,

at or before the time of his arrest—and because he bore the burden of proof at the September 11 bond hearing. Reply 3, 6–7 (emphasis omitted). The Reply urges that other courts in the Eastern District of New York have required the government to bear the burden of proof in § 1226(a) bond hearings, even after fewer than 30 days have passed. Reply 6–7 (citing *Tsai v. Maldonado*, No. 26-cv-05517 (E.D.N.Y. Sept. 15, 2026)). Adding to the arguments raised in the petition, the Reply also asserts that petitioner's arrest was not supported by a valid NTA because (1) the July 17 NTA was not filed with the Executive Office of Immigration Review ("EOIR") prior to petitioner's arrest, (2) it was not served on petitioner prior to his arrest, and (3) the hearing date on it had already passed by the time of petitioner's arrest. Reply 4–5. Further, also for the first time, the Reply argues that petitioner's bond hearing was "fundamentally unfair" because the IJ refused to postpone the hearing to permit his counsel to provide the IJ with a copy of his asylum materials. Reply. 7–8. And finally, the Reply asserts that administrative exhaustion is not required for him to raise legal questions about the constitutional adequacy of the government's detention procedures like those at issue here. Reply 9–10.

## LEGAL STANDARD

### I. 28 U.S.C. § 2241

Section 2241 authorizes federal district courts "to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)). Under Section 2241, "[f]ederal courts have jurisdiction to hear habeas corpus claims by noncitizens challenging the constitutionality of their detention."

*Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 290 (E.D.N.Y. 2025) (citing *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020)).[2]

## II. 8 U.S.C. § 1226(a)

Section 1226(a) states that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States . . . . [P]ending such decision, the Attorney General . . . may continue to detain the arrested alien [or] may release the alien on . . . bond of at least $1,500 . . . or conditional parole." 8 U.S.C. § 1226(a). The Department of Homeland Security has issued regulations implementing this statutory provision. *See* 8 C.F.R. § 1236.1.

The language of Section 1226(a) "undoubtedly vests broad authority to arrest and detain[,] but due process must account for the wide discretion [that the statute affords] to arrest any person in the United States suspected of being removable." *Gopie v. Lyons*, No. 25-cv-05229, 2025 WL 3167130, at *2 (E.D.N.Y. Nov. 13, 2025) (quoting *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 492 (E.D.N.Y. 2025). "[B]efore the Government may exercise such discretion to detain a person, Section 1226(a) and 8 C.F.R. § 1236.1(c)(8) require ICE officials to make an individualized custody determination." *Id.* In conducting this individualized custody determination, "ICE must allow the noncitizen to demonstrate to the satisfaction of the officer that release would not pose a danger to property or persons, and that the noncitizen is likely to appear for any future proceeding." *Id.* (quoting *Kelly v. Almodovar*, No. 25-cv-06448, 2025 WL 2381591, at *3 (S.D.N.Y. Aug. 15, 2025)); *see also* Initial Custody Determination Worksheet 1, ECF No. 8-8

---

[2] Throughout this Order, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.

(requiring officer to memorialize in writing whether "the individual has established that he/she does not pose a danger to persons or property").

After ICE makes an initial custody determination, ICE regulations entitle an individual detained under Section 1226(a) to request a bond hearing before an IJ at any time before a final order of removal is issued. *See* 8 C.F.R. § 236.1(d)(1); *see also Guerrero v. Decker*, No. 19-cv-11644, 2020 WL 1244124, at *2 (S.D.N.Y. Mar. 16, 2020) ("After ICE makes an initial decision to detain an alien, the alien may request a bond hearing (also known as a custody redetermination hearing) from an IJ at any time before a removal order becomes final."). The IJ's bond decision is then appealable to the Board of Immigration Appeals ("BIA"). *Guerrero*, 2020 WL 1244124, at *2.

Section 1226(e) provides that "[ICE]'s discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by [ICE] under this section regarding the detention of any alien or the revocation or denial of bond or parole." 8 U.S.C. § 1226(e). In other words, Section 1226(e) "precludes judicial review of the IJ's weighing of evidence and factual findings" regarding a petitioner's bond. *Arevalo-Guasco v. Dubois*, 788 F. App'x 25, 27 (2d Cir. 2019) (summary order).

However, Section 1226(e) does not limit the Court's ability to address constitutional claims or questions of law, including "claims that the discretionary process itself was constitutionally flawed." *Velasco Lopez*, 978 F.3d at 850. "Whether [a petitioner] received the due process to which he was entitled is not a matter of discretion and is subject to judicial review." *Id.*

## DISCUSSION

### I. NTA

Taking petitioner's asserted statutory and constitutional violations in the order in which they occurred, the Court begins with petitioner's argument that his arrest was not supported by a valid NTA. Specifically, petitioner argues that because (1) the hearing date on the July 17 NTA had passed by the time of his arrest (2) he had not yet been served the NTA at the time of his arrest, and (3) the NTA had not yet been filed with EOIR at the time of his arrest, there was no "valid operative charging document . . . in place when ICE invoked" the July 17 I-200 warrant to arrest petitioner. Reply 4–6.

Petitioner's argument is unavailing. To be sure, this Court has held that for a Form I-200 warrant to support a petitioner's arrest, that warrant must have been issued "[a]t the time of issuance of" a valid NTA "or at any time thereafter"—and, specifically, not *before* the NTA was issued. *Meza v. Francis*, No. 26-cv-02722, 2026 WL 1734903, at *2 (E.D.N.Y. June 16, 2026) (quoting 8 C.F.R. § 1236.1 (b)(1)). But petitioner has provided no authority to suggest that an NTA must be served on a noncitizen or filed with EOIR before a valid Form I-200 warrant may be issued pursuant to it. Indeed, the relevant regulation speaks of the "issuance," not the "service" or "filing," of an NTA as the point at which a Form I-200 warrant may be issued. 8 C.F.R. § 1236.1 (b)(1). Further, the text of the statute does not support petitioner's argument that an NTA is rendered invalid when the date of the hearing for which it provides notice has passed or is changed. *See* 8 U.S.C. § 1229(a)(2). The statute explicitly contemplates potential "change[s] or postponement[s] in the time and place of such proceedings," with no indication that such changes invalidate or undermine the prior notice or restart the removal process. *Id.*

Petitioner does not argue that the NTA issued on July 17 was deficient or lacked required information at the time it was issued, as was at issue in both Supreme Court cases he cites. *See* Reply 5 (citing *Pereira v. Sessions*, 585 U.S. 198, 202 (2018), then citing *Niz-Chavez v. Garland*, 593 U.S. 155, 160–62 (2021)). And it is clear from the record provided that the Form I-200 that supported petitioner's arrest was issued after that NTA was issued. *See* NTA 2; Form I-200 at 2.

Accordingly, the Court sees no indication that petitioner was arrested pursuant to an invalid Form I-200 warrant.

## II. Same-Day, Post-Arrest Custody Determination

Next, petitioner argues that ICE violated Section 1226(a), its regulations, and his due process rights because it did not provide him with an initial custody determination prior to or at the time he was arrested on August 12 at 8:15 AM. Reply 2–4. Instead, petitioner's Notice of Initial Custody Determination indicates that that determination was made approximately two and a half hours later, at 10:49 AM. Notice of Initial Custody Determination 2, ECF No. 8-9. And his initial custody determination worksheet was signed approximately another 45 minutes after that, at 11:33 AM. Initial Custody Determination Worksheet 3. Petitioner urges that that post-arrest determination was insufficient. Further, he argues that the government has not established that he was "actually afforded an opportunity to be heard before or at the time the custody determination was made," as required by this Court in *Terrero v. Tsoukaris*, No. 26-cv-00869, 2026 WL 607917 (E.D.N.Y. Mar. 4, 2026). *See* Reply 4.

The government has provided evidence that petitioner was afforded an opportunity to be heard prior to the custody determination memorialized in the Notice of Initial Custody Determination and the Initial Custody Determination worksheet.

Specifically, the Declaration of ICE Deportation Officer Brandon Rodriguez reports that ICE Officer Patrick Heerey interviewed the defendant about various details relevant to his possible detention prior to that decision. Rodriguez Decl. ¶ 11. Rodriguez also declares that petitioner was given "an opportunity to be heard regarding whether he would pose a danger to the community or a flight risk if he were released" during that conversation. Rodriguez Decl. ¶ 11. Petitioner has not contested this account. *See generally* Reply. Instead he simply stresses that both the Notice of Initial Custody Determination and the Initial Custody Determination were completed "after [he] had already been arrested and confined" and urges that the government "[has] not establish[ed] that Petitioner was afforded an opportunity to be heard before or contemporaneously with the 8:15 a.m. deprivation of liberty" that coincided with his arrest. Reply 3 (emphasis omitted). Accordingly, the question at issue here is not whether petitioner was given an opportunity to be heard but instead whether he was given an opportunity to be heard *soon enough*—that is, whether his post-arrest, pre-custody determination opportunity to contest his detention was sufficient to meet the requirements of the statute and due process. After reviewing the statute and caselaw, the Court holds that on the facts before the Court, it was.

As the government points out, the statute's language assumes that the government's detention decision will occur post-arrest. Resp. 8. It speaks of the government's ability to "*continue* to detain [an] arrested [noncitizen]" or to "*release*" him following his arrest on an immigration warrant—both assuming that the noncitizen has already been detained. 8 U.S.C. § 1226(a) (emphasis added). The relevant regulations carry the same assumption: they provide that "[a]ny officer authorized to issue a warrant of arrest may, in the officer's discretion, *release* an alien . . . provided that the alien must

demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." 8 U.S.C. § 236.1(c)(8) (emphasis added). And, "although there would surely be a reasonableness requirement," neither the statute nor the regulation puts a set temporal limitation on how quickly the detention decision must occur. *Loja Loja v. Acting Field Off. Dir. of New York Ice Enf't & Removal Operations*, No. 26-cv-05368, 2026 WL 2321934, at *5 (S.D.N.Y. Aug. 10, 2026). Thus, the Court holds that petitioner's post-arrest opportunity to be heard regarding that detention determination, which occurred just a few hours after his arrest, did not violate the relevant statute or regulations.

Nor did a post-arrest, pre-custody determination opportunity to be heard violate petitioner's due process rights. Due process claims are evaluated under the three-factor balancing test outlined in *Mathews v. Eldridge*, 424 U.S. 319 (1976). "The three *Mathews* factors are: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Velasco Lopez*, 978 F.3d at 851.

In this case, "the private interest affected by the official action is the most significant liberty interest there is—the interest in being free from imprisonment." *Black v. Decker*, 103 F.4th 133, 151 (2d Cir. 2024). Thus, that factor weighs in petitioner's favor. However, the Court finds that the second factor is at best neutral. Petitioner had an opportunity to be heard and received an individualized custody determination shortly after his arrest, Rodriguez Decl. ¶ 11, and he has not explained how a pre-arrest

determination would have decreased the risk of an *erroneous* deprivation of that liberty interest under these circumstances—especially given that information critical to that determination likely would not have been available to the government prior to his arrest. *See* Resp. 9 ("Logistically, [custody] determinations are completed after arrest, such that officers may obtain information as to a myriad of categories including family equities, medical issues, and other special vulnerabilities that may impact detention-related decisions, in particular by interviewing the individual."). Finally, under the third factor, a pre-arrest determination would pose significant administrative burdens on the government. Arresting officers would have to be trained not only to execute arrest warrants but also to conduct interviews asssessing a non-citizen's community ties, special vulnerabilities, and flight risk reliably in the field without compromising safety or the accuracy of the custody determination process.[3] That would place a heavy and costly burden on the government here. Thus, this factor weighs in favor of the government and tips the scales against petitioner's due process argument.[4]

---

[3] The Court notes that, under petitioner's proposed procedure, such in-the-field interviews would almost certainly be necessary. Indeed, in *Terrero*, this Court held that a pre-arrest custody determination made before the petitioner had an opportunity to be heard by the determining officer was invalid. 2026 WL 607917, at *2. Such an opportunity to be heard would of course be difficult, if not impossible, to accomplish before officers encountered the petitioner at the time of arrest.

[4] Contrary to petitioner's claims, this Court's prior order in *Terrero* does not support a different conclusion here. *See* Reply 3 (citing *Terrero*, 2026 WL 607917, at *3). In that case, the Court rejected a pre-arrest custody determination that took place before the petitioner had any opportunity to be heard because it deprived petitioner of the right to have his position considered as part of the custody analysis. *Terrero*, 2026 WL 607917, at *2–3 ("Because of the chronology of [] events, it was not possible that Officer Diaz spoke to or communicated with petitioner in any respect before or while making the decision to keep petitioner detained[.]"). Here, however, petitioner had an opportunity to be heard prior to his custody determination. Rodriguez Decl. ¶ 11. And *Terrero* does not hold or

Accordingly, neither the relevant statute and its regulations nor petitioner's due process rights were violated by the fact that petitioner's opportunity to be heard and contest the need for his detention occurred before his individual custody determination and less than three hours following his arrest, rather than prior to or simultaneously with his arrest.

### III. IJ's Refusal to Postpone Hearing

However, the IJ's refusal to briefly postpone the bond hearing to allow petitioner to provide relevant materials is a different story. Petitioner argues that the IJ's failure to briefly adjourn his bond hearing to allow his counsel to provide his asylum application to the court violated his due process rights, Reply 7–9, and the Court agrees.

"To establish a violation of due process, a[ noncitizen] must show that []he was denied a full and fair opportunity to present [his] claims or that the IJ or BIA otherwise deprived [him] of fundamental fairness." *Burger v. Gonzales*, 498 F.3d 131, 134 (2d Cir. 2007). In a case much like this one, a court in the District of New Jersey found that the

---

suggest that a custody determination is required to occur pre-arrest. 2026 WL 607917, at *2. Accordingly, petitioner's reliance on *Terrero* is unavailing.

This case is also distinguishable from the other cases invoked by petitioner, because in those cases, the petitioner either did not receive an individualized custody determination or did not have an opportunity to be heard prior to the determination he or she received. *See H.A.C.F v. Francis*, No. 26-cv-00872, 2026 WL 861152, at *2 (E.D.N.Y. Mar. 30, 2026) (finding no "indication that [petitioner] was provided with the required pre-detention due process in the records uploaded by Respondents"); *Cespedes Alonso v. Maldonado*, No. 26-cv-05181, Memorandum & Order at 2 (E.D.N.Y. Aug. 26, 2026), ECF No. 8 (finding no indication that petitioner was given an opportunity to be heard prior to his "custody determination"); *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 313 (E.D.N.Y. 2025) ("There is no dispute that [petitioner] was given no notice or opportunity to be heard prior to her sudden arrest and detention at the conclusion of her credible fear interview."); *Gopie v. Lyons*, No. 25-cv-05229, 2025 WL 3167130, at *2 (E.D.N.Y. Nov. 13, 2025) (government did not provide any evidence that petitioner was given an opportunity to be heard).

denial of a brief continuance amounted to a due process violation. *See Carrion v. Field Off. Dir. of Immigr. & Customs Enf't*, No. 26-cv-00004, 2026 WL 735195, at *2 (D.N.J. Mar. 16, 2026). In that case, during the hearing, the petitioner had informed the IJ that specific evidence relevant to his request for bond was in the mail and had not yet arrived. *Id.* The petitioner accordingly requested an adjournment to be able to present the evidence in support of his request. *Id.* The IJ "refused, stating that the court was following the guidance provided by the New Jersey Court that says that we have to conduct a bond hearing by today." *Id.* The IJ "then denied bond because [the] [p]etitioner had 'not provided' sufficient evidence demonstrating that he was not a flight risk or danger to the community." *Id.* The New Jersey district court held that "[t]hat reasoning [could not] be reconciled with due process." *Id.* It explained that the IJ's "refusal to allow [the p]etitioner even minimal time to obtain the documents he identified effectively foreclosed any meaningful evidentiary presentation," and "[a] bond determination rendered on such a truncated record does not satisfy the requirements of fundamental fairness." *Id.*

In the separate but analogous context of petitions for review of BIA removal decisions, the Second Circuit has similarly faulted IJs for denying a continuance requested by the petitioner for the purpose of providing additional relevant evidence and then denying that petitioner's claim for relief based on the absence of that very evidence. *See, e.g.*, *Roman v. Garland*, 49 F.4th 157, 167 (2d Cir. 2022). In *Roman*, the IJ denied the petitioner's request for a continuance "on an assumption that witness testimony would be unnecessary." *Id.* The IJ then "faulted [the petitioner] for perceived gaps in the record that those witnesses likely would have been able to fill" and denied petitioner's application for cancellation of removal. *Id.* The Circuit concluded that that course of

action could not "be located within the range of permissible decisions" available to an IJ and remanded the case to the agency for further review. *Id.* at 170.

This case is no different. Here, the IJ explicitly acknowledged that without petitioner's asylum materials to review, she would "not have any indication that [the application was] likely to be approved or [that it would be] a valid claim or that [petitioner had] shown prima facie eligibility for relief." Bond Hr'g Tr. 5:13–14. Despite that acknowledgement, she rejected petitioner's counsel's request to adjourn the hearing to be permitted to obtain and provide those materials. Bond Hr'g Tr. 6:24–25. And she did so only to promptly turn around and rely in part on the "speculative" nature of petitioner's asylum claim when denying him bond. Bond Hr'g Tr. 5:03–7:10. Accordingly, the IJ's conduct violated petitioner's due process rights. *See Carrion*, 2026 WL 735195, at *2.

The next issue, then, is what remedy is appropriate to address that violation. Courts in this Circuit have distinguished cases "where an individual's detention is 'unlawful from its inception,'" in which "the 'typical remedy' is release" from cases where "the relevant due process violation occurred after [p]etitioner's []detention—*e.g.*, when his bond hearings were conducted in an untimely manner or without proper procedural protections—[in which] that violation might be cured by something other than release, such as by ordering a constitutionally appropriate bond hearing." *O.F.C. v. Almodovar*, No. 25-cv-09816, 2026 WL 74262, at *6 (S.D.N.Y. Jan. 9, 2026) (collecting cases). Because here, the relevant deprivation occurred after petitioner's detention, the Court finds that the appropriate remedy is a bond hearing in which petitioner is permitted to provide his asylum materials for the IJ's consideration.

### IV. Bond Hearing Burden of Proof

Because a new bond hearing is required for the reasons just explained, the Court need not determine whether the proper burden of proof was applied in petitioner's September 11 bond hearing.[5] However, for the avoidance of doubt in petitioner's next bond hearing, this Court today joins the "overwhelming consensus" of judges in this Circuit "in concluding that the Government should bear the burden to deny liberty at any Section 1226(a) bond hearing, regardless of the noncitizen's length of detention." *Quintanilla v. Decker*, No. 21-cv-00417, 2021 WL 707062, at *3 (S.D.N.Y. Feb. 22, 2021) (collecting cases); *see also Tsai v. Maldonado*, No. 26-cv-05517, 2026 WL 2719996, at *1, *6–7 (E.D.N.Y. Sept. 15, 2026) (ordering release unless the government requested a court-held bond hearing at which it would bear the burden, where petitioner filed after 25 days of detention).

Numerous courts in the Second Circuit have held that "where, as here, the [g]overnment seeks to detain a noncitizen pending removal pursuant to § 1226(a), the Fifth Amendment's Due Process Clause requires the [g]overnment to bear the burden of proving, by clear and convincing evidence, that such detention is justified." *J.C.G. v. Genalo*, No. 24-cv-08755, 2025 WL 88831, at *7 (S.D.N.Y. Jan. 14, 2025) (collecting cases); *see also Bohorquez v. Mullin*, No. 26-cv-02053, 2026 WL 1693948, at *7 (E.D.N.Y. June 11, 2026). Like the court in *J.C.G.*, this Court "is persuaded by the courts' analyses given the well-settled expectation that the Government bears a 'heightened burden of proof . . . in civil proceedings in which the individual interests at stake . . . are both

---

5 The Court notes, however, that although the bond hearing transcript does not indicate explicitly on whom the IJ placed the burden, *see generally* Bond Hr'g Tr., the government does not contest that it was placed on petitioner, Resp. 11–13.

particularly important and more substantial than mere loss of money.'" *J.C.G.*, 2025 WL 88831, at *7 (quoting *Cooper v. Oklahoma*, 517 U.S. 348, 363 (1996)).

The government objects that the Second Circuit expressly declined "to establish a bright-line rule for when due process entitles an individual detained under § 1226(a) to a new bond hearing with a shifted burden," when it ordered a burden-shifted hearing in *Velasco Lopez*, and the government further observes that the petitioner in that case had been detained for far longer than the petitioner in this case. Resp. 11 (citing *Velasco Lopez*, 978 F.3d at 855 n.13). However, as other courts addressing that same argument have observed, that temporal issue was not squarely before the Circuit at the time, given Velasco Lopez's already prolonged detention. *See, e.g.*, *J.C.G.*, 2025 WL 88831, at *9. Further, the Second Circuit cited approvingly several district court cases that endorsed a broader ruling. *See Velasco Lopez*, 978 F.3d at 855 n.14 (citing *Darko v. Sessions*, 342 F. Supp. 3d 429, 435–36 (S.D.N.Y. 2018), then citing *Medley v. Decker*, No. 18-cv-07361, 2019 WL 7374408, at *3 (S.D.N.Y. Dec. 11, 2019), and then citing *Rajesh v. Barr*, 420 F. Supp. 3d 78, 87 (W.D.N.Y. 2019)). Thus, the government has provided no reason for this Court to depart from the example set by the numerous district courts mentioned above.

Accordingly, at any new bond hearing provided under this Order, the government must bear the burden of proof by clear and convincing evidence.

## V. Administrative Exhaustion

Finally, the Court addresses the government's administrative exhaustion argument. The government argues that the Court should abstain from ruling and dismiss the petition because petitioner has failed to exhaust his administrative remedies, and because, on appeal, the BIA could moot the petition by reversing the IJ's bond denial, eliminating the need to decide the constitutional questions at issue here. Resp. 6–8 (citing

*Hernandez v. Maldonado*, No. 26-cv-05584, 2026 WL 2983493, at *2 (E.D.N.Y. Oct. 5, 2026)). However, "[t]here is no statutory requirement that a habeas petitioner exhaust his administrative remedies before challenging his immigration detention." *Rivera Esperanza v. Francis*, 817 F. Supp. 3d 187, 199 (S.D.N.Y. 2025) (quoting *Araujo-Cortes v. Shanahan*, 35 F. Supp. 3d 533, 538 (S.D.N.Y. 2014)). And though courts generally do require such exhaustion "as a prudential matter," *Guzman v. Joyce*, 786 F. Supp. 3d 865, 869 (S.D.N.Y. 2025), "[a] court may excuse a failure to exhaust when, among other reasons, 'irreparable injury may occur without immediate judicial relief,' or 'in certain instances a plaintiff has raised a substantial constitutional question.'" *Gibson v. Genalo*, No. 26-cv-06646, 2026 WL 3136379, at *6 (S.D.N.Y. Oct. 20, 2026) (quoting *Rivera Esperanza*, 817 F. Supp. 3d at 199, in turn quoting *Beharry v. Ashcroft*, 329 F.3d 51, 62 (2d Cir. 2003), *as amended* (July 24, 2003)).

"Most courts in this Circuit that have held that [immigration habeas] petitioners are excused from exhausting their administrative remedies[] have done so on the basis of the fourth exemption: that a petitioner had raised a 'substantial constitutional question.'" *Rivera Esperanza*, 817 F. Supp. 3d at 199 (collecting cases). Because the Court finds that the issues in this case, too, present substantial constitutional questions regarding petitioner's due process rights, the Court excuses petitioner's failure to exhaust his administrative remedies.

## CONCLUSION

The petition is GRANTED in part and DENIED in part. Within seven business days from the date of this Memorandum & Order, either respondents shall hold a constitutionally adequate, individualized bond hearing at which the burden of proof shall lie with the government to prove by clear and convincing evidence that petitioner is a

flight risk or a danger to the community or they shall release him. However, should the petitioner still be awaiting a copy of his I-589 asylum application materials, (1) petitioner shall promptly file a letter with this Court explaining that that is the case, (2) petitioner shall file a subsequent letter within 24 hours of receiving the materials and submitting them to the IJ, and (3) respondents shall either hold a bond hearing of the type just described or release petitioner within seven business days of petitioner's submission of the materials to the IJ. At any bond hearing provided under this Memorandum & Order, the immigration judge is also hereby directed to meaningfully consider alternatives to incarceration and petitioner's ability to pay if setting a monetary bond. The matter is remanded to the immigration court for further proceedings consistent with this Memorandum & Order. No more than 24 hours after the bond hearing ordered in this Memorandum & Order, the government shall file a letter on the docket confirming that it occurred.

The Clerk of Court is respectfully directed to enter judgment consistent with the Order and close the case. Should the petitioner seek an award of reasonable fees and costs under the Equal Access to Justice Act, he may file a letter application on the docket within thirty days of this Order.

**SO ORDERED.**

/s/ *Natasha C. Merle*
NATASHA C. MERLE
United States District Judge

Dated: November 5, 2026
Brooklyn, New York